IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN RE:                                       )
                                             )
KIMBERLY TAYLOR,                             )   Case No. 05-20232-drd
                                             )
        Debtor.                              )

MEMORANDUM OPINION

This matter comes before the Court on the Trustee's motion to compel turnover of property of the estate. The Trustee requests that the Court order debtor Kimberly Taylor ("Debtor") to turnover the nonexempt portion of funds in her bank account as of the date of the filing of Debtor's bankruptcy petition, such amount including funds for which Debtor had issued checks prepetition but which had not yet been honored by Debtor's bank on the filing date. Debtor argues that the amount of the checks written prepetition, but that had not yet cleared her bank on the date of filing, was not property of the estate and should not be included in determining the amount of funds in her bank account on the date of filing. Debtor also argues that it should be the Trustee's responsibility to issue stop payment orders on prepetition checks or to notify the bank upon notice of the bankruptcy filing. The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court denies the Trustee's motion to compel turnover.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Debtor filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code on February 5, 2005. Debtor also filed schedules which identified the bank name, account type, and the city in which the bank is located[1]. Debtor had written checks to creditors and made withdrawals

---

[1] Debtor's Schedules indicated a bank account balance of only $10.00.

from her account at automated teller machines (ATMs)[2] prior to filing her bankruptcy petition which would have reduced her bank account balance to $736.39[3] once the checks had been honored and the ATM withdrawals reflected on her account statement. However, on the filing date, prior to any of the checks being honored or withdrawals reflected, Debtor's bank statement showed a balance of $4,116.57. Debtor does not dispute this amount. After deducting available exemptions allowed Debtor in the amount of $2,190.00, the Trustee demanded that Debtor turnover nonexempt funds in the amount of $1,926.00. However, Debtor has refused to turnover such funds, arguing that after deducting the check and ATM withdrawal amounts from her bank account balance on the filing date her balance was $736.39, that such amount is less than her allowed exemptions and thus, she is not required to turnover any funds to the Trustee.

## II. DISCUSSION AND ANALYSIS

### A. Bank Account Balance as Property of the Estate

Section 541(a)(1) of the Bankruptcy Code provides that the commencement of a case creates a bankruptcy estate. Such estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. *See* 11 U.S.C. § 541(a)(1). Debtor argues that, at the time of filing, the funds in the account upon which Debtor had issued checks

---

[2] Arguably, withdrawals from an ATM occur at the time of withdrawal since the Debtor obtains physical possession of funds at that time. Thus, any ATM withdrawals that occurred prepetition and were no longer in the bank account on the date of filing did not become property of the estate. Any funds withdrawn from an ATM post-petition were property of the estate and must be turned over to the Trustee by Debtor. It appears from the evidence that Debtor withdrew $250 from an ATM post-petition on February 6. Debtor must turnover those funds to the Trustee unless they are subject to an available exemption, which it appears they are. This opinion will address only the prepetition checks that had not yet been honored at the time of filing but which were subsequently honored by Debtor's bank post-petition, thus effectuating a post-petition transfer. *See In re Maurer*, 140 B.R. 744, 745-46 (D. Minn. 1992).

[3] This is the amount that Debtor calculated after reconciling all account activity and explained to the Court at the hearing that she would use as the relevant balance that should have been reflected in her check register on the filing date.

that had not yet been presented were not property of the estate.  Debtor contends that the money leaves the account, for purposes of determining what constitutes property of the estate, at the time the check is written.

The Court rejects Debtor's argument as inconsistent with applicable state law, the Uniform Commercial Code, which provides that the check is just an order of the drawer (the Debtor) to pay the holder (the creditor) and does not effectuate payment until it is presented to and honored by the drawee bank (Debtor's bank).  *See* Mo. Rev. Stat. 400.3-101, *et seq*.; 400.4-101, *et seq.*; *see also, Barnhill v. Johnson*, 503 U.S. 393 (1992) (finding no transfer of any part of debtor's claim against the bank occurred until the bank honored the check; for purposes of payment by check, a "transfer" under § 101(54) occurs on the date of honor, and not before); *see also, In re Sawyer*, 324 B.R. 115, 119-121 (Bankr. D. Ariz. 2005).  The Eighth Circuit has adopted the date of delivery as the date on which a transfer occurs for purposes of evaluating a new value defense under § 547(c)(4), but the majority of courts hold that transfer occurs on payment for purposes of determining when a preference occurs under § 547(b).  *See In re Maurer*, 140 B.R. 744 (D. Minn. 1992) (adopting date of honoring rather than date of delivery for purposes of determining when a check transfers into the bankruptcy estate).  The Court agrees with the *Maurer* court that this case presents a situation closer to a § 547(b) claim rather than a § 547(c) claim and that the court should be more concerned with ensuring equality of distribution among creditors rather than encouraging creditors to deal with a debtor[4].  Therefore, this Court also adopts the date of honoring rather than the date of delivery for purposes of

---

[4]The Court also observes that if, before any of the outstanding checks had been presented to Debtor's bank for payment, the bank account had been garnished, the garnishment order would take precedence over and prevent the bank from honoring the subsequently presented checks.  The Trustee has similar status on the date of filing of the petition under § 544(a)(1).

determining the effective date of a transfer made by a check in this context.

Accordingly, this Court finds that the date of Debtor's checks being honored is the appropriate date to use to determine whether the amount of a prepetition check becomes part of the bankruptcy estate under § 541. Thus, the pre-petition checks at issue that were not honored by Debtor's bank until post-petition were property of Debtor's bankruptcy estate on the date of filing.

### B. Turnover of Account Funds Paid Post-Petition

While the Court agrees with the Trustee that property of the estate includes the funds in the account as of the date of filing, notwithstanding the existence of previously drawn but unpresented checks, this begs the question as to who should be accountable for the fact that checks may have been paid post-petition and that property of the estate has been withdrawn from the account subsequent to filing and from whom the recovery of those funds may be obtained. The issue thus becomes whether, under § 542[5], on the date of filing, Debtor had "possession, custody, or control" of the funds in the account on which she had already issued checks to creditors, but which had not yet been honored by the bank, and thus a duty to deliver such funds to the Trustee, or if the Trustee more appropriately is charged with the responsibility of securing the funds. Debtor asserts that she no longer had control of the funds since she had already issued checks to creditors, and that she should therefore not be bound to turnover the amount of the non-exempt funds to the Trustee.

In *In re Figueira*, 163 B.R. 192 (Bankr. D. Kan. 1993), the trustee sought turnover of

---

[5] Section 542(a) states in relevant part:
[A]n entity. . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee such property or the value of such property. . . .

4

Case 05-20232-drd7   Doc 24   Filed 11/09/05   Entered 11/09/05 10:22:52   Desc Main
Document      Page 5 of 8

funds in the debtor's bank account on the date of filing which included funds for which the debtor had issued prepetition checks which had not yet cleared the bank on the date of filing but were later honored post-petition. That court determined that the debtor was simply owed a debt by his financial institution in the amount of the funds in the account at the time of filing, and that there was no requirement that he assist the trustee with the collection of a debt owed to the estate. *Id.* at 194. The court also concluded that it was the trustee's responsibility to secure the account at the time of filing and to pursue the bank or creditor which had possession or control of property of the estate. *Id.*

Conversely, faced with similar facts, the court in *Sawyer* concluded that the debtors had the requisite control at the time of filing over the funds in their account as to which they had written checks to their creditors prepetition because the bank had not authorized final payment on the checks at the time of the bankruptcy filing. *Sawyer*, 324 B.R. at 123; *see also, Maurer*, 140 B.R. at 747 (holding debtor must turn over funds to trustee that were in account on date of filing even though prepetition checks were later honored post-petition; funds were in debtor's account until the checks were honored by debtor's bank and that until that time, debtor still had the opportunity to close the account or to stop payment on the checks).

This Court agrees with the *Figuera* court's conclusion regarding the debtor's control of the funds in the account at the time of filing[6]. Immediately upon the filing of the bankruptcy petition by Debtor, the funds in the account became property of the estate pursuant to § 541 and were to have been delivered to the Trustee. Generally, this is interpreted to mean a constructive

---

[6]The Court does not agree with that court's analysis regarding the preferential transfer issue. The transfers would not be pre-petition preferential transfers under 11 U.S.C. § 547 because the transfer occurred when the bank honored the checks, which was postpetition.

5

delivery is made by the debtor at the time the case is filed by disclosing any assets on her schedules and physical delivery, if possible, can be arranged at a later date. *See Figuera*, 163 B.R. at 194. Pursuant to Bankruptcy Rules 1007 and 4002(3) and the bankruptcy forms, a debtor must file schedules disclosing any assets, including a bank account, along with the account number, name and location of the bank, or if the schedules are not filed immediately, a list of debts owed to the debtor and payable on demand. At the time of filing, the trustee becomes the representative of the estate and has the responsibility to secure property of the estate and to seek payment of debts owed to a debtor. *See* 11 U.S.C. § 323; *see also, Figuera*, 163 B.R. at 194. The Bankruptcy Rules contemplate that the Trustee will give the notices necessary to ensure that property of the estate is paid to the trustee. *See* Fed. R. Bankr. P. 2015(a)(4). In this jurisdiction, a trustee is promptly notified via email of the filing of the case and of his or her appointment. Assuming the debtor has filed the appropriate schedules or lists, the trustee should have the information necessary to ensure that debts owed to the debtor are paid to the trustee in his or her capacity as representative of the estate. As Debtor argues, expecting her to give such notice prior to the filing of the petition might subject her to civil liability (which might arguably be nondischargeable) or criminal penalty. After the filing of the petition, the Debtor should not be giving direction to parties with respect to the disposition of property of the estate.

      Here, as in *Figuera*, the amount of funds in Debtor's bank account at the time of filing was a debt owed to Debtor by the bank. Debtor identified the asset (or debt owed) in her schedules by listing the bank name, account type, and the city in which the bank is located. It appears to this Court that the Trustee then had the responsibility to either notify the identified bank of the bankruptcy filing so that the bank no longer had the ability to honor outstanding

6

checks post-petition, or to issue a stop payment on any outstanding checks[7]. If the bank were promptly notified of the filing, it would be subject to liability for payment of debts to a person or entity other than the trustee. If notice was not promptly sent to the bank by the Trustee and the bank had no actual notice or knowledge of the bankruptcy filing, it could honor any prepetition checks that were subsequently presented to it without liability. *See* 11 U.S.C. § 542(c). A creditor presenting such a check post-petition would not be guilty of committing a violation of the automatic stay. *See* 11 U.S.C. §§ 362(b)(11); *see also, Thomas v. Money Mart (In re Thomas)*, 311 B.R. 75 (Bankr. W.D. Mo. 2004), *aff'd*, 2005 WL 2897643 (8th Cir. 2005).

The Trustee may then seek to recover from the creditors to which the bank paid the funds at issue under 11 U.S.C. § 549(a) (trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and that is authorized only under § 303(f) or § 542(c)). The debtor will usually be less able to answer for the funds paid post-petition than the creditors who actually received the money. If the trustee recovers from the creditors, their claims will be reinstated to the extent of the recovery, may be filed against the estate and will provide the basis for at least a partial recovery. While the claims will be reinstated, being prepetition, they will still be subject to discharge. If for some reason, the debtor wishes to pay them in order to preserve a relationship with the creditor, the debtor may always voluntarily do so pursuant to § 524(f), but is not compelled to do so.

---

[7] As noted above, while Debtor scheduled her bank account in this case, she listed a balance of only $10.00 which would appear to be inaccurate even under her theory for determining the appropriate account balance on the date of filing. While the amount was inaccurate, the existence and location of the account were identified. As the Court noted in *Figuera*, it may simply be necessary for trustees in such cases to send notices immediately to all institutions holding funds of the debtor, regardless of the scheduled balance in the account. In the future, however, the Court will expect debtors to schedule account balances in a manner consistent with the guidance given in this opinion.

Therefore, for the reasons stated above, the Trustee's motion to compel turnover is hereby denied. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

ENTERED this 9th day of November 2005.

/s/ Dennis R. Dow

THE HONORABLE DENNIS R. DOW
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Janice A. Harder

Noel Bisges